FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 SEP 27  P 2: 25

CLERK'S OFFICE
AT GREENBELT
BY_____ DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Southern Division

|  |  |  |
|---|---|---|
| **TRUSTEES OF THE ELECTRICAL** | * | |
| **WELFARE TRUST FUND,** *et al.*, | * | |
| | * | |
| **Plaintiffs,** | | **Case No.: GJH-14-3018** |
| | * | |
| **v.** | | |
| | * | |
| **TECHNOLOGY SERVICE GROUP, LLC.,** | | |
| | * | |
| **Defendant.** | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Pursuant to Fed. R. Civ. P. 55(b), Trustees of the Electrical Welfare Trust Fund

("Welfare Fund"); Trustees of the Electrical Workers Local No. 26 Pension Trust Fund

("Pension Fund"); Trustees of the Local No. 26 Joint Apprenticeship and Training Trust Fund

("Apprenticeship Fund"); Trustees of the Local No. 26 Individual Account Fund ("Account

Fund"); Trustees of the Labor Management Corporation Committee[1]; Collection Agent for the

National Electrical Benefit Funds ("NEBF") and Collection Agent for the Local No. 26,

International Brotherhood of Electrical Workers (collectively, "Plaintiffs") have filed a Motion

for Default Judgment, with supporting declarations and exhibits, against Defendant Technology

Service Group, LLC ("TSG" or "Defendant"), ECF No. 10, which they have twice

---

[1] In their Second Amended Complaint, Plaintiffs' refer only to "Labor Management Cooperation Committee." ECF
No. 6 ¶ 1. However, the Declaration attached to the Supplemental Motion for Default Judgment and the Motion
itself, refer to the "National Labor Management Cooperation Committee" and variously, either the "Local Labor
Management Corporation Committee" or merely the "Labor Management Cooperation Committee." ECF No. 11-2 ¶
1; ECF No. 11-1 ¶¶ 7-8. As the "Labor Management Cooperation Committee" could be construed as referring to
both the Local Labor Management Cooperation Fund and the National Labor Management Cooperation Fund, the
Court will allow the claims to proceed.

supplemented. ECF Nos. 11 and 13. No hearing is necessary to resolve the Motion. *See* Loc. R.

105.6 (D. Md. 2016). For the reasons that follow, Plaintiffs' Motion is granted.

## I.    BACKGROUND

Four of the Plaintiffs bring this action in their capacity as Trustees of the following funds:

Electrical Welfare Trust Fund ("Welfare Fund"); Electrical Workers Local No. 26 Pension Trust

Fund ("Pension Fund"); Local No. 26 Joint Apprenticeship and Training Trust Fund

("Apprenticeship Fund"); Local No. 26 Individual Account Fund ("Account Fund") and Labor

Management Corporation Committee. ECF No. 6 ¶ 1. The remaining two Plaintiffs bring this

action in their capacity as Collection Agents for the National Electrical Benefit Funds ("NEBF")

and Local No. 26, International Brotherhood of Electrical Workers ("Local 26*"). Id.* Hereinafter,

the Plaintiffs will be referred to collectively as the "Trustees" of their respective "Funds".

The above referenced Funds were established and are maintained as a result of a

Collective Bargaining Agreement pursuant to the Labor-Management Relations Act ("LMRA"),

29 U.S.C. § 186(c)(5),(6). ECF No. 6 ¶ 2. The plans of which the Funds are a part are "multi-

employer plans" as those terms are defined in the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. §§ 1002(3). *Id.* ¶ 4. Furthermore, the Trustees are "fiduciaries" of the

plans, as defined under ERISA, 29 U.S.C. §1002(21). *Id.* ¶ 5.

Defendant TSG is a Maryland Limited Liability Company that made contributions to the

Funds. *Id.* ¶ 8. TSG's "Resident Agent" is located in Fort Washington, Maryland. *Id.* ¶ 7. Venue

in this Court is proper as federal courts have jurisdiction over ERISA and LMRA claims

pursuant to 29 U.S.C. § 1132(e) and 29 U.S.C. § 185, the alleged breach occurred in this district

and Defendant's agent is located within the district.

Plaintiffs allege that during the relevant time period, Defendant entered into two

Collective Bargaining Agreements ("CBAs") with Local 26, which also bound it to the

2

agreements and declarations of trust establishing the Funds at issue in the present suit. ECF No. 6 ¶¶ 10-11; ECF No. 13 at 2.[2] Pursuant to said agreements, Defendant is required to submit contribution reports to the Plaintiffs. ECF No. 6 ¶ 12. The reports must list the name of each person employed pursuant to the CBAs and the number of compensable hours of wages paid to each such person, and are due within 30 days after the contribution liability was incurred. *Id.* Defendant is then required to submit contributions to the Funds in the amounts due pursuant to the CBAs. *Id.*

Pursuant to the above referenced agreements, if contributions are paid after the due date, the Defendant must pay interest on the untimely and unpaid contributions at an annual rate of 7% and pay liquidated damages of 20% of the monthly contribution balance due. ECF No. 11-2 ¶ 4.[3] In addition, Defendant is required to pay attorneys' fees and costs incurred by the Trustees in collecting the amounts due the Funds. ECF No. 6 ¶ 12.

Plaintiffs bring this action pursuant to both ERISA and the LMRA to enforce Defendant's obligation to contribute to the Funds and to enforce their rights "arising out of [D]efendant's violation of the [CBAs]". *Id.* ¶ 8. Plaintiffs allege that Defendant has failed to file contribution reports and make payments in a timely manner from February 2014 through August 2014, and thus owes Plaintiffs liquidated damages and interest for these months. ECF No. 6 ¶ 13. In addition, they allege that Defendant has failed to make contributions to the Funds for work completed between September 1, 2014 through April 1, 2015. *Id.* Defendant thus owes Plaintiffs their unpaid contributions, along with liquidated damages and interest, for these periods. *Id.*

---

[2] During the relevant time period, two CBAs governed the parties, ECF No. 13-9, effective June 2012 – May 2015, and ECF No. 13-10, effective June 2015 – May 2018. Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.
[3] The Second Amended Complaint listed an interest rate that differed from what appeared in the Declaration attached to the Supplemental Motion for Default Judgment. This error was corrected in Plaintiff's Supplement to their Supplemental Motion for Default Judgment. ECF No. 13.

Plaintiffs further allege that they have demanded payment of these delinquent amounts but Defendant has "failed and refused to pay." *Id.* ¶ 14.

Plaintiffs initiated the present action on September 24, 2014. ECF No. 1. Subsequently, Plaintiffs filed an Amended Complaint on March 17, 2015, ECF No. 5, and a Second Amended Complaint on April 1, 2015, ECF No. 6. In their Second Amended Complaint, Plaintiffs alleged failures to make contributions and submit reports from September 1, 2014, failures to make timely payments or submit timely contributions report from February 2014 through August 2014 and stated that their requested relief included amounts flowing from failures to pay contributions accruing during this litigation. ECF No. 6 ¶¶ 13, 15. Plaintiffs also request attorneys' fees and costs pursuant to ERISA, 29 USC § 1132(g)(2), their CBAs and the terms of the underlying trust agreements. *Id.* ¶ 16.

In Count II, Plaintiffs request that the Court (1) enforce the terms of the CBAs and trust agreements by ordering Defendant to permit a complete audit from January 1, 2014 through the date of the audit and (2) enter, upon Affidavit of the Plaintiffs, judgment against the Defendant for the full amount determined in the audit, plus liquidated damages and interest from the date of delinquency to the date of payment; and any expenses, including accountant's fees, incurred during the audit. ECF Nos. 6 ¶ 20 and11-1 ¶ 10.

On April 28, 2015, Plaintiffs filed a Motion for Clerk's Entry of Default, ECF No. 7, and an Order of Default was entered by the Clerk of the Court against Defendant on May 22, 2015. ECF No. 8. Plaintiffs filed a Motion for Default Judgment on December 21, 2015, ECF No. 10, and a Supplemental Motion for Default Judgment on January 6, 2016. ECF No. 11. Defendant's response to Plaintiff's Motion for Default Judgment was due on January 25, 2016. ECF No. 11. At the request of the Court, Plaintiffs provided an additional supplement to the Motion for

4

Default on September 20, 2016. ECF Nos. 12 and 13. To date, Defendant has failed to submit any pleadings to this Court regarding the claims at issue.

In Plaintiffs' initial Supplemental Motion for Default Judgment, Plaintiffs indicate that, since the initiation of the present action, Defendant has continued to fail to submit reports and make contributions to the Funds as required under its CBAs. *See* ECF No. 11-1 at 2.

## II.    STANDARD OF REVIEW

"A defendant's default does not automatically entitle the plaintiff to entry of a default judgment: rather, that decision is left to the discretion of the court." *Choice Hotels Intern., Inc. v. Savannah Shakti Carp.*, No. DKC-11-0438, 2011 WL 5118328 at * 2 (D. Md. Oct. 25, 2011) (citing *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D. Md. 2002)). Although "[t]he Fourth Circuit has a 'strong policy' that 'cases be decided on their merits,'" *id.* (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir.1993)), "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party[.]" *Id.* (citing *S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D. Md. 2005)).

"Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005). Rule 54(c) of the Federal Rules of Civil Procedure limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." In entering default judgment, a court cannot, therefore, award additional damages "because the defendant could not reasonably have expected that his damages would exceed th[e] amount [plead in the complaint]." *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (citing *S.E.C. v. Management Dynamics,*

*Inc.*, 515 F.2d 801, 814 (2nd Cir. 1975); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2nd

Cir. 1981)). While the Court may hold a hearing to prove damages, it is not required to do so; it

may rely instead on "detailed affidavits or documentary evidence to determine the appropriate

sum." *Adkins*, 180 F.Supp.2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857

(5th Cir. 1979)); *see also Laborers' District Council Pension, et al. v. E.G.S., Inc.*, No. WDQ–

09–3174, 2010 WL 1568595, at *3 (D. Md. Apr.16, 2010) ("[O]n default judgment, the Court

may only award damages without a hearing if the record supports the damages requested.").

## III.    DISCUSSION

### A.  Liability

In considering a Motion for Default Judgment, the Court accepts as true the well-pleaded

factual allegations in the Complaint as to liability, but nevertheless "must determine whether

[those] allegations . . . support the relief sought in th[e] action." *Int'l Painters & Allied Trades

Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 685 (D. Md.

2013) (citation and internal quotation marks omitted). Plaintiffs bring these claims both as

violations of ERISA and of their CBAs pursuant to LMRA. As the recovery would be the same

under both statutes, the Court will analyze these claims under ERISA.

In the Second Amended Complaint, the Funds allege that Defendant, in contravention of

their respective trust agreements, 1) failed to submit contribution reports and make payments in a

timely manner from February 2014 through August 2014, and 2) failed to submit reports and

make any contributions for work completed between September 1, 2014 through April 1, 2015.

ECF No. 6 ¶ 13. The Declaration of Julie A. Linkins, an employee of the Funds responsible for

maintaining records with respect to monthly reports and contributions of contractors such as

Defendant, further establishes that Defendant variously failed to make the required contributions,

6

made untimely contributions and failed to provide the necessary monthly reports. ECF No. 11-2 ¶ 6

ERISA states that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *see also* 29 U.S.C. § 1132(g) (providing that employers who fail to timely make contributions are liable in a civil action for, inter alia, unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorneys' fees, and costs of the action). ERISA therefore "'provide[s] trustees of multiemployer benefit plans with an effective federal remedy to collect delinquent contributions.'" *Int'l Painters,* 919 F. Supp. 2d at 685–86 (quoting *Laborers Health & Welfare Trust Fund for Northern Cal. v. Advanced Lightweight Concrete Co., 484 U.S. 539*, 541 (1988)). Thus, assuming the truth of the well-pleaded allegations in the Second Amended Complaint, Plaintiffs have established Defendant's liability for failure to pay the contributions as required under the CBAs and trust agreements.

## B. Relief

### 1. Damages

Plaintiffs now seek damages under ERISA, 29 U.S.C.§ 1132(g)(2), and pursuant to their CBAs and respective trust agreements. "When a plaintiff prevails in an ERISA action to enforce the payment of delinquent contributions due to an employee benefit plan, the court *shall* award the plan: (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under

subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by the

defendant, and (E) such other legal or equitable relief as the court deems appropriate." *Bd. of

Trustees of Operating Engineers Local 37 Ben. Fund v. Fraternal Order of Eagles Cumberland

No. 245*, No. WDQ-09-3123, 2010 WL 4806975, at *3 (D. Md. Nov. 18, 2010)(emphasis in

original).

The Court is, of course, limited in the amount of damages it may award in a default

judgment by Rule 54(c). Under that rule, the award may not "differ in kind from, or exceed in

amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Although the damages sought

in Plaintiffs' Motion for Default Judgment differ in dollar amount than those sought in Plaintiffs'

Second Amended Complaint, this Court recently recognized:

> Where a complaint demands a specific amount of damages *and* unspecified
> additional amounts, . . . so long as a defendant has notice that additional
> unspecified damages may be awarded if the case proceeds to judgment, general
> allegations in the complaint may suffice to support default judgment in an amount
> that is proven, either by way of exhibits, affidavits, and other documentation in
> support of a motion for default judgment, or at a hearing.

*Tr. of the Nat'l Automatic Sprinkler Indus. Welfare Fund v. Harvey*, No. GJH-15-521, 2016 WL

297425, at *5 (D. Md. Jan. 21, 2016) (emphasis in original). Indeed, "the purpose of Rule 54(c)'s

prohibition on damages that 'exceed in amount' or 'differ in kind' from that sought in the

complaint is to allow the defendant to be able to 'decide on the basis of the relief requested in the

original pleading whether to expend the time, effort, and money necessary to defend the action.'"

*Id.* (quoting 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2663

(3d ed. 1998)). Thus, Rule 56(c) "does not preclude an award of damages that accrued during the

pendency of the action [where] such damages were explicitly requested in the complaint, and

sufficiently established by the affidavits submitted by plaintiffs." *Id.* (quoting *Ames v. STAT Fire

Suppression, Inc.*, 227 F.R.D. 361, 362 (E.D.N.Y. 2005)). In those circumstances, a defendant is

8

"put on notice that [the] plaintiff was seeking such damages when defendant was served with the complaint" and "[t]hat notice was renewed when defendant was served with [the plaintiff's] motion for default judgment . . . ." *Id.* (quoting *Ames*, 227 F.R.D. at 362).

Here, Plaintiffs seek judgment against Defendant in an amount totaling $117,094.26[4], broken down as follows: $38,494.50 in unpaid contributions, liquidated damages and interest due to the Welfare Fund; $28,395.36 in unpaid contributions, liquidated damages and interest due to the Pension Fund; $4,817.91 in unpaid contributions, liquidated damages and interest due to the Apprenticeship Fund; $22,198.26 in unpaid contributions, liquidated damages and interest due to the Account Fund; $4,688.45 in unpaid union dues withheld from employees' wages but not remitted to Local 26; $9,928.31 in unpaid contributions, liquidated damages and interest due to the NEBF; $49.12 in unpaid contributions, liquidated damages and interest due to the National Labor Management Cooperation Committee; $491.15 in unpaid contributions, liquidated damages and interest due to the Labor Management Cooperation Committee; and attorneys' fees and costs of $8,031.20.[5] ECF No. 11-1 ¶¶ 1-10; *see also* ECF No. 11-2 ¶¶ 6-13.

In their Second Amended Complaint, Plaintiffs alleged failures to make contributions and submit reports from September 1, 2014, failures to make timely payments or submit timely contributions report from February 2014 through August 2014 and stated that their requested relief included amounts flowing from failures to pay contributions accruing during this litigation

---

[4] As discussed in more depth in footnote 5, this amount excludes claims on behalf of Plaintiff AMF.

[5] Despite multiple amendments and supplements to their initial Complaint, for the first time in the pleadings and without explanation, Plaintiffs move for Default Judgment against Defendant in favor of a new Plaintiff, "Trustees of the AMF". ECF No. 11-1 ¶ 9. Even if the Court were to construe Plaintiffs' Motion for Default Judgment as an Amended Complaint, Plaintiffs have offered no evidence that Defendant was given notice of the additional claim of relief as to new Plaintiff AMF. Federal Rule of Civil Procedure 5(a) provides that "[n]o service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4." Fed. R. Civ. P. (5)(a) Here, Plaintiffs asserts an additional claim for relief - specifically that of additional Plaintiff AMF - and therefore an Amended Complaint should have been served on TSG in accordance with Federal Rule of Civil Procedure 4. As Plaintiffs have proffered no evidence of service, Plaintiffs Motion for Entry of Default Judgment as to Plaintiff AMF is denied without prejudice.

ECF No. 6 ¶¶ 13, 15. Defendant, accordingly, had notice at the time the Second Amended Complaint was filed that failure to defend the action could result in a judgment in excess of the specific dollar figure stated in the Second Amended Complaint. Defendant also received notice of the specific amounts Plaintiffs sought to recover in default judgment when they were served with copies of Plaintiffs' Supplemental Motion for Default Judgment on January 6, 2016. ECF No. 11. Accordingly, "[t]he damages sought by Plaintiffs in their Motion for Default Judgment do not 'differ in kind' or 'exceed in amount' tha[n] plead for in the Complaint; rather under the plain language of that provision, the damages Plaintiffs request in their Motion are precisely the damages plead for in the Complaint, notwithstanding that the total amount of those damages has increased since the time this action was initiated." *Harvey*, 2016 WL 297425, at \*6.

In support of their request for contributions owed under the CBA and underlying trust agreements, Plaintiffs submit the Declaration of Julie A. Linkins, Department Manager of Accounting and Administrative Services at the Local 26, IBEW-NECA Trust Fund Office. ECF No. 11-2. In that role, she is responsible for maintaining records with respect to monthly reports and contributions of contractors such as Defendant, and determining any liquidated damages, interest and legal fees due on untimely payments, pursuant to the CBA and trust agreements. *Id.* ¶ 2.

Linkins attests that Defendant is bound to the terms of the CBAs between the National Electrical Contractors Association and Local 26, which in turn binds it to the underlying trust agreements. *Id.* ¶ 3. She further states that Defendant submitted monthly contribution reports but failed to make payments in a timely matter for the months of February 2014 - October 2014, and thus owes Plaintiffs liquidated damages and interest for these months. *Id.* ¶¶ 6-7. In addition, she indicates that Defendant has failed to make contributions and failed to submit reports to the Funds for work completed between November 2014 and November 2015. *Id.* ¶¶ 8-9. Defendant

thus owes Plaintiffs contributions, liquidated damages and interest to the respective Funds for these periods. *Id.*

She further attests that, pursuant to the CBA and trust agreements, "unpaid or late contributions payments are subject to a one-time liquidated damages assessment of 20% of the monthly contribution balance due and also the assessment of interest....at the annual rate of 7%." *Id.* ¶ 6. Plaintiffs note that the underlying trust agreements provide for an annual rate of interest not exceeding 24%, but they add that, as "a matter of fundamental fairness" Plaintiffs have a "longstanding history dating back more than 20 years to apply interest on delinquent contributions at the rate of 7% annually." ECF No. 13 ¶ 3.

Additionally, pursuant to the CBA and trust agreements, the Trustees have the authority to conduct an audit of the payroll and wage records of Defendant for the purpose of determining contributions owed. ECF No. 11-2 ¶ 10. Linkins states that, as a result of an audit of Defendant's 2013 payroll, Plaintiffs have identified a deficiency of $145.07 attributable to various funds. *Id.* ¶ 11. As Defendant has not disputed the audit's findings, the Funds are therefore also owed the audit deficiency amount in accordance with the CBAs. *Id.*

Linkin's calculations are documented in spreadsheet specifying all of Defendant's unpaid contributions, late contributions, and amounts due as result of the audit. ECF No. 11-2 at 28-29. The record therefore substantiates Plaintiffs' request for unpaid contributions, interest and liquidated damages.

### 2. Attorneys' Fees and Costs

Reasonable attorneys' fees and costs are available under ERISA, 29 USC § 1132(g)(2), the CBAs and the trust agreements. ECF No. 6 ¶ 16. In support of their claim for attorneys' fees, Plaintiffs submit the declaration of their attorney, Charles F. Fuller, along with monthly billing statements specifying the hourly billing by Fuller and his co-counsel, Johanna Montero-Okon.

ECF No. 11-3. These materials indicate that Gilligan's firm spent 29.7 hours on this case on behalf of Plaintiffs, at a rate of $240 per hour for attorney time in 2014 and $250 per hour for attorney time in 2015, as agreed upon with Plaintiffs. ECF No.11-3 ¶¶ 6-7. Fuller further attests that he has been a member of this Court for over 30 years and that his co-counsel, Ms. Montero-Okon has been a member of the Pennsylvania Bar since 2010. ECF No. 11-3 ¶¶ 2-3.

Local Guidelines note that a reasonable rate for lawyers admitted to the bar for less than five years is between $150 - 225, increasing to between $300 and $475 an hour for lawyers admitted to the bar for twenty or more years. *See* Local Rule App. B (D. Md. 2016). A review of the materials indicates that Mr. Fuller himself handled the majority of the case, with Ms. Montero-Okon only billing approximately 4.2 hours. ECF No. 11-3 at 6-24. Therefore, a fee of $240 and $250 an hour is reasonable given the range of prices an experienced lawyer such as Mr. Fuller could have charged. The Court also finds that the amount of hours dedicated to this case were reasonable given the number of Plaintiffs involved, though it observes that they are on the high end of the range for this type of litigation. *See Trustees of the Bricklayers Local 1 of MD, VA and DC Health and Welfare Fund, et al.,* GJH-15-3228, ECF No. 9 (Sept. 2, 2016)(awarding attorneys' fees for18.5 hours of work, including paralegal time, for an ERISA case involving a similar number of Plaintiffs). Therefore, the Court finds that the record substantiates an award of $7,323.00 in attorneys' fees.

Fuller's declaration and attached billing statements also substantiates the following expenses: $300.00 for multiple attempts at service of process, $400 for filing fees and postage costs of $59.29. ECF No. 11-3 ¶ 7. Thus, Plaintiffs have shown that they were billed $759.49 in costs. However, due to a small discrepancy in the amount billed to Plaintiffs and the amount paid by Plaintiffs to counsel's firm, Plaintiffs are requesting and are thus awarded a combined total of $8,031.20 in attorneys' fees and costs. *See* ECF No. 11-3 ¶ 8 (discussing payment discrepancy).

### 3. Injunctive Relief

In Count II, Plaintiffs request that the Court (1) enforce the terms of the CBAs and trust agreements by ordering Defendant to permit a complete audit from January 1, 2014 through the date of the audit and (2) enter, upon Affidavit of the Plaintiffs, judgment against the Defendant for the full amount determined in the audit, plus liquidated damages and interest from the date of delinquency to the date of payment; and any expenses, including accountant's fees, incurred during the audit. ECF Nos. 6 ¶ 20; 11-1 ¶ 10.

In conjunction with a default judgment regarding the enforcement of a collective bargaining agreement, the Court may also order injunctive relief. *See Trustees of the Nat. Asbestos Workers Pension Fund v. Ideal Insulation Inc.*, No. CIV. ELH-11-832, 2011 WL 5151067, at *4–5 (D. Md. Oct. 27, 2011)(citations omitted). Pursuant to the CBAs, the Trustees have the authority to conduct an audit for the purposes of determining the accuracy of the contributions to the funds. ECF No. 11-2 ¶ 10. Injunctive relief in the form of compelling an audit is permissible in ERISA actions. *See Trustees of the Nat. Asbestos Workers Pension Fund*, 2011 WL 5151067, at *7-8 (ordering Defendant to allow Plaintiff's auditor to conduct an audit and produce any record requested by Plaintiff's auditor). Therefore, Defendant is ordered to permit a complete audit from January 1, 2014 through the date of the audit and (2) pay, upon Affidavit of the Plaintiffs, the full amount determined in the audit, plus liquidated damages and interest from the date of delinquency to the date of payment; and any expenses, including accountant's fees, incurred during the audit.

### IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Supplemental Motion for Default Judgment, ECF No. 11, is **GRANTED**. Judgment will be entered in favor of Plaintiffs in the amount of $117,094.26, broken down as follows: $38,494.50 in unpaid contributions, liquidated damages

13

and interest due to Welfare Fund; $28,395.36 in unpaid contributions, liquidated damages and interest due to the Pension Fund; $4,817.91 in unpaid contributions, liquidated damages and interest due to the Apprenticeship Fund; $22,198.26 in unpaid contributions, liquidated damages and interest due to the Account Fund; $4,688.45 in unpaid union dues withheld from employees' wages but not remitted to Local 26; $9,928.31 in unpaid contributions, liquidated damages and interest due to the NEBF; $49.12 in unpaid contributions, liquidated damages and interest due to the National Labor Management Cooperation Committee; $491.15 in unpaid contributions, liquidated damages and interest due to the Labor Management Cooperation Committee; and attorneys' fees and costs of $8,031.20.

Defendant is further ordered to allow Plaintiff's auditors to conduct an audit going back to January 1, 2014, and to pay all contributions shown to be due, upon affidavit from the Plaintiff, as long as such amounts are not duplicative of the amounts already granted in this order, plus liquidated damages and interest assessed from the date of delinquency though the date of payment.

Defendant is also ordered to pay all expenses, including accountant's fees, associated with the audit, per its CBAs. A separate Order follows.

Dated: September 27, 2016

GEORGE J. HAZEL
United States District Judge